UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| XAVIER JOSEPH NAMPIAPARAMPIL, <br><br> Plaintiff, <br><br> -v- <br><br> NEW YORK CITY CAMPAIGN FINANCE BOARD, *et al.*, <br> Defendants. | 25-CV-1346 (JPO) <br><br> OPINION AND ORDER |

J. PAUL OETKEN, District Judge:

Plaintiff Xavier Joseph Nampiaparampil, proceeding *pro se*, brings this case against the New York City Campaign Finance Board (the "Board" or "CFB"), the New York City Department of Sanitation Enforcement Division, the City of New York, and Joseph Gallagher, general counsel of the CFB (collectively, "Defendants") under 42 U.S.C. § 1983, asserting claims under the First and Fourteenth Amendment. Before the Court is Defendants' motion to dismiss the first amended complaint (the "FAC"). For the reasons that follow, the motion is granted in part and denied in part.

## I.      Background

The following facts are taken from the FAC and Nampiaparampil's additional filings, and are presumed true for the purpose of resolving the motion to dismiss. *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013). Nampiaparampil is an engineer and statistician who has experience in marketing analytics and regression analysis. (ECF No. 4 ("FAC") ¶ 15.) He has previously worked for a political party to identify the party's highest-yield donors based on statistical modeling. (*Id.*) His daughter, Devi Nampiaparampil ("Devi"), ran for New York City Public Advocate in the 2021 general election. (*Id.* ¶ 2.)

Nampiaparampil's wife, Mary Nampiaparampil ("Mary"), served as the treasurer of Devi's campaign.  (*Id.* ¶ 24.)  Nampiaparampil himself was not a staff member in his daughter's campaign.  (ECF No. 49 at 7.)

Nampiaparampil intended to use his skills in data analysis and political fundraising modeling in support of Devi's campaign.  (FAC ¶ 20.)  However, the CFB capped personal contributions to Devi's campaign at $2,000 per individual and subjected volunteer services, appraised based on their fair market value, to that cap.  (*Id.* ¶ 21.)  Because Nampiaparampil had already contributed $2,000 in funds, he could not volunteer for Devi's campaign without exceeding the limit.  (*Id.*)  Nampiaparampil was also prohibited from using existing datasets from his past work in political fundraising, as the CFB deemed those datasets a contribution.  (*Id.*)  Nampiaparampil further alleges that the financial restrictions imposed by Defendants barred Devi's campaign from spending funds on security measures for Devi or her volunteers.  (*Id.* ¶ 35.)  Nampiaparampil, concerned about his daughter's safety while she was petitioning, experienced severe stress and emotional distress.  (*Id.*)

The FAC alleges that Defendants also took certain actions that affected Devi's campaign.  Nampiaparampil alleges that Defendants misrepresented, suppressed, or excluded information about Devi's candidacy in the Voter Guide that it publishes as part of its role in administering elections.  (*Id.* ¶¶ 42-43.)  Further, Defendants placed the debate for the 2021 election on Spectrum News NY1, a cable channel that is accessible only in a limited number of buildings and households in New York City, as opposed to the major network television stations that the CFB had historically used.  (*Id.* ¶¶ 47-48.)  Defendants also denied Indian-American and Asian-American journalists access to the debate while allowing other media outlets to cover the event.  (*Id.* ¶ 51.)

Devi's campaign concluded on November 2, 2021. (*Id.* ¶ 29.) The CFB subsequently initiated an audit of Devi's campaign finances. (*Id.*) Although Nampiaparampil wanted to use his professional background to assist with the audit, the CFB barred outside assistance because Devi's campaign could no longer solicit funds or services from donors without risking violating campaign finance regulations and incurring penalties. (*Id.*) And because Mary, Nampiaparampil's wife, was an officer of Devi's campaign, any penalties that she incurred would have affected Nampiaparampil, who has joint assets with her. (*Id.*)

The FAC also alleges that Mary was wrongfully issued sanitation summonses by city authorities as part of a broader pattern of governmental harassment against Nampiaparampil's family in response to their political engagement. (*Id.* ¶ 36.) Mary, who had been diagnosed with cancer, became demoralized and Nampiaparampil suffered emotional distress as a result. (*Id.* ¶¶ 36-37.) Mary was never served with a summons but was also prohibited from hiring a lawyer due to the spending restrictions on campaign-related legal fees. (*Id.* ¶ 39.)

Devi commenced an action against the CFB on September 29, 2021. (*Id.* ¶ 40.) Shortly thereafter, Mary was fined $1,000 for allegedly posting signs that said "Vote for Dr. Devi on Nov. 2nd." (*Id.*) On February 14, 2025, Devi and her campaign were sent an Enforcement Notice signed by Gallagher, attached to the FAC, which indicated that the staff of the CFB had recommended that the Board determine that Devi's campaign must pay $20,217 in penalties for violations of CFB rules and the Campaign Finance Act. (*Id.* at 27.) The Enforcement Notice indicated that the Board would make a final determination on any violations or subsequent penalties and that the recipient of the Notice—Devi and her campaign—must respond with all supporting explanations, documentation, and evidence that they intend to provide no later than March 21, 2025. (*Id.*) Failure to meet the deadline would constitute a waiver of any rights to

participate in the post-election enforcement process, including the right to a hearing before the Board or an administrative law judge. (*Id.*) The Enforcement Notice required financial disclosures from Devi's campaign approximately every six months until the campaign files a final statement showing disposal of all assets and satisfaction of all liabilities. (*Id.* at 29.) Failure to make a timely disclosure statement could result in penalties. (*Id.*)

Nampiaparampil commenced this action on February 14, 2025. (ECF No. 1.) He then filed the FAC on February 18, 2025. (*See* FAC.) Defendants filed the present motion to dismiss on September 26, 2025 (ECF No. 36), alongside a memorandum of law in support (ECF No. 37 ("Mem.")). Nampiaparampil filed an opposition on November 6, 2025 (ECF No. 42 ("Opp.")), alongside exhibits attached to both his opposition and a separate letter (*id.*; ECF No. 43). Defendants filed a reply in further support on December 10, 2025. (ECF No. 48.) Nampiaparampil filed a supplemental notice of the procedural posture of relevant audit and enforcement proceedings on April 23, 2026. (ECF No. 49.)

## II.    Legal Standards

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings." *Id*.

A case is properly dismissed for failure to state a claim under Rule 12(b)(6) if the complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide

4

the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*

All reasonable inferences that can be drawn from the complaint must be construed in the light most favorable to the plaintiff. *See Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020). Additionally, courts "must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest." *Cruz* v. *Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (quotation marks omitted). However, courts are "not bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon* v. *Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (Sotomayor, J.) (quotation marks omitted).

In deciding a motion to dismiss, courts may "consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). "Where a document is not incorporated by reference, the court may never[the]less consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." *Id.* (quotation marks omitted). "Although courts generally may not look outside the[se] pleadings when reviewing a Rule 12(b)(6) motion to dismiss, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials." *Alsaifullah*, 2013 WL 3972514, at *4 n.3 (quotation marks omitted). "Accordingly, where a *pro se* plaintiff is faced with a motion to dismiss, a court may consider materials outside the complaint to the extent that they are consistent with the allegations in the complaint." *Id.* (quotation marks omitted); *see also Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A

5

district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion.").

### III.   Discussion

####   A.   Standing

Defendants argue that Nampiaparampil lacks standing to bring his claims.  (*See* Mem. at 13-16.)  "The Court must ensure that the constitutional requirement of standing is met prior to adjudicating a plaintiff's claims."  *Angeles v. Grace Prods., Inc.*, No. 20-CV-10167, 2021 WL 4340427, at *1 (S.D.N.Y. Sept. 23, 2021) (Nathan, J.) (citing *Steel Co. v. Citizens for a Better Env't.*, 523 U.S. 83, 93-96 (1998) and *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). "For a plaintiff to have Article III standing, he must establish three things: (1) that he has an injury in fact; (2) that there is a causal connection between his injury and the conduct complained of; and (3) that his injury will be redressed by a favorable judicial decision."  *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 442 (2d Cir. 2022).  "Plaintiffs also must comply with prudential limitations on standing, including the rule that a party cannot assert claims 'on the legal rights or interests of third parties,' but rather 'must assert his own legal rights and interests.'"  *Rubin v. New York City Bd. of Educ.*, No. 20-CV-10208, 2023 WL 1972729, at *12 (S.D.N.Y. Jan. 6, 2023) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)), *report and recommendation adopted*, No. 20-CV-10208, 2023 WL 2344731 (S.D.N.Y. Mar. 3, 2023).[1]

---

[1] Defendants also argue that Nampiaparampil is not the real party in interest for any of his claims.  The Federal Rules of Civil Procedure provide that an "action must be brought by the person who, according to the governing substantive law, is entitled to enforce the right."  *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 193 (2d Cir. 2003) (quotation marks omitted). "[A] party may have Article III standing but nevertheless not be the real party in interest when the party has completely assigned the claim to another."  *Nat'l Credit Union Admin. Bd. v. HSBC Bank US, Nat'l Ass'n*, 331 F.R.D. 63, 70 n.2 (S.D.N.Y. 2019).  Defendants do not make arguments as to real party in interest that are distinct from their arguments as to standing, and

Nampiaparampil asserts a number of claims, many of which are related.  The first set of his claims (the "Campaign Finance Claims") challenge Defendants' campaign finance restrictions which, as alleged in the FAC, affected Nampiaparampil's ability to donate to and volunteer for Devi's campaign, the campaign's ability to afford security measures, and Devi's and Mary's ability to retain legal representation in proceedings related to the campaign's funds and spending.  (FAC ¶¶ 53-68.)  The FAC also alleges that Defendants weaponized these campaign finance restrictions in retaliatory fashion against the campaign.  (*Id.* ¶¶ 80-82.)  The second set of Nampiaparampil's claims (the "Election Administration Claims") concern Defendants' exclusion or alteration of information about Devi's campaign in Defendants' Voter Guide and Defendants' conduct as related to the 2021 debate and media access.  (*Id.* ¶¶ 69-79.)  Because standing is analyzed on a claim-by-claim basis, *see DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) ("[O]ur standing cases confirm that a plaintiff must demonstrate standing for each claim he seeks to press."), the Court takes each of Nampiaparampil's claims in turn.

### 1.    Campaign Finance Claims

#### a.    Cap on Donations and Volunteer Services

Nampiaparampil asserts a First Amendment claim on the basis that Defendants' spending cap regulations and their appraisal of volunteer work as in-kind contributions "have unconstitutionally restricted [his] right to participate in political advocacy."  (FAC ¶¶ 53, 54-60.) Nampiaparampil has standing to assert this claim because he has alleged that he is unable to donate to and volunteer his services, including data analysis and auditing assistance, for Devi's

---

there is no reason to believe that Nampiaparampil has assigned any of his claims to another. Accordingly, the Court focuses on Defendants' challenges to standing.

campaign to the full extent that he would like.  That is a cognizable First Amendment injury.  *See Landell v. Sorrell*, 382 F.3d 91, 105 (2d Cir. 2004*), rev'd and remanded on other grounds sub nom. Randall v. Sorrell*, 548 U.S. 230 (2006) (holding that contributors have "standing to assert their challenge to [state] expenditure and contribution limits").  "It is . . . well established that contributors to political parties and campaigns engage in protected First Amendment activities." *Corren v. Sorrell*, 151 F. Supp. 3d 479, 494 (D. Vt. 2015) (holding that contributors to individual candidates have standing to challenge limitations in Vermont's campaign finance law as it pertains to publicly-funded candidates); *see also New York Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 487 (2d Cir. 2013) (holding that campaign contribution limits constitute a "direct restriction on political expression" of campaign contributor).  Nampiaparampil thus has standing to bring a First Amendment claim against Defendants' campaign finance restrictions as they inhibited his ability to contribute money or volunteer services to Devi's campaign.

Nampiaparampil seems to further assert a First Amendment claim based on future contemplated participation in New York City elections that would be subject to the same campaign finance regulations.  The FAC alleges that he "wishes to participate in the 2025 election cycle but his speech remains chilled by the existing statutes restricting him from *volunteering* in excess of donor contribution limits."  (FAC ¶ 5; *see also id.* ¶ 29 (noting that Nampiaparampil "will be capped in the 2025 citywide elections" because "[i]f his chosen candidate participates in the matching funds program, he will be capped at $2100").)  At the time that Nampiaparampil filed the FAC, the 2025 elections had not yet happened.  To bring a pre-enforcement First Amendment claim, a plaintiff must demonstrate "(1) 'an intention to engage in a course of conduct arguably affected with a constitutional interest'; (2) that the intended conduct is 'arguably proscribed by' the challenged regulation; and (3) that 'there exists a credible threat

8

of prosecution thereunder' that is 'sufficiently imminent.'" *Cerame v. Slack*, 123 F.4th 72, 81

(2d Cir. 2024) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159, 162 (2014)). "An

allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is

a "'substantial risk" that the harm will occur.'" *Vitagliano v. County of Westchester*, 71 F.4th

130, 136 (2d Cir. 2023) (per curiam) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409,

414 n.5 (2013)).

Although the FAC alleges that Nampiaparampil "wishes to participate in the 2025

election cycle" (FAC ¶ 5), the FAC does not identify any specific campaign to which

Nampiaparampil sought to contribute, nor does it allege that such a campaign would be subject

to the same financial caps as Devi's campaign. Indeed, it does not even allege that

Nampiaparampil intends to donate money or services in excess of any challenged regulation.

Even though pre-enforcement First Amendment claims are assessed "under somewhat relaxed

standing rules," *Upsolve, Inc. v. James*, 155 F.4th 133, 139 (2d Cir. 2025) (cleaned up), *cert.*

*denied sub nom. Upsolve, Inc. v. James*, No. 25-948, 2026 WL 858427 (U.S. Mar. 30, 2026), a

plaintiff still must demonstrate an intention to engage in a course of conduct arguably affected

with a constitutional interest that is arguably proscribed by the challenged regulation, *Susan B.*

*Anthony List*, 573 U.S. at 159, 162. Here, Nampiaparampil has not alleged that he intends to

donate to a candidate in excess of Defendants' challenged regulations.[2] Accordingly, he has

---

[2] In his Opposition, Nampiaparampil indicates that he "was interested in potentially volunteering" on the campaigns for Theo Bruce Chino Tavarez and Paperboy Love Prince, but that "there was no point" because he "learned that all were under ongoing regulation of any legal spending that might be used towards becoming tag-along plaintiffs." (Opp. at 18.) This statement, which seems to concern whether the two campaigns would also be restricted from engaging legal counsel if they exceeded their budgets under Defendants' public funding program, does not clarify if Nampiaparampil sought to donate to their campaigns in excess of Defendants' campaign finance regulations.

failed to plead a future injury that is "certainly impending." *Vitagliano*, 71 F.4th at 136 (quotation marks omitted).

### b.    Retaliation

Nampiaparampil also asserts a First Amendment retaliation claim on the basis that Defendants' audits, threats of enforcement, and threat of sanitation fines were retaliation for his family's political participation and legal efforts. (FAC ¶¶ 9, 68, 80, 82.)  On this claim, Nampiaparampil lacks standing.  The retaliation alleged in the FAC was directed at the campaign and officers of that campaign, like Devi and Mary. (*See, e.g.*, *id.* ¶ 40 (noting that Mary "was on the hook for over $1,000 in sanitation fines" after Devi filed her suit, and that "the campaign had been punitively charged" the day that Nampiaparampil commenced this action).)  Indeed, despite Nampiaparampil's argument in his opposition that the Enforcement Notice compelled *him* to turn over evidence (Opp. at 14), the Enforcement Notice that is attached to the FAC is addressed only to Devi and to Devi's campaign and does not address Nampiaparampil. (*Id.* at 27, 29 (requesting only "the Campaign[]" to respond to the Notice and requiring only the campaign to "continue filing semi-annual disclosure statements").)  Nampiaparampil was not a subject of Defendants' investigations into Devi's campaign, was not required to satisfy any discovery or disclosure obligations, and was not liable for any resulting penalties.

Nampiaparampil argues that he has standing because his household would suffer as a result of the penalties—in particular, because he shares joint assets with Mary, and therefore would be financially injured by any penalty. (Opp. at 5-7; FAC ¶¶ 4, 29, 55.)  However, "shared home ownership or bank accounts or reciprocal wills does not automatically give wives or husbands standing to sue for economic injuries allegedly inflicted on their marital partners." *Meimaris v. Royce*, No. 18-CV-4363, 2019 WL 4673572, at *6 (S.D.N.Y. Sept. 25, 2019)

(quotation marks and parentheses omitted), *aff'd*, No. 19-3339-CV, 2021 WL 5170725 (2d Cir. Nov. 8, 2021).  Nampiaparampil also alleges that he suffered emotional distress from watching his family campaign without security and from watching Defendants subject his family to retaliatory proceedings.  (FAC ¶¶ 35, 37-38).  However, "only the person toward whom the state action was directed, and not those incidentally affected[,] may maintain a § 1983 claim." *Morgan v. City of New York*, 166 F. Supp. 2d 817, 819 (S.D.N.Y. 2001) (quotation marks omitted).  For this reason, "[a] plaintiff lacks standing to bring a § 1983 claim on their own behalf based upon a deprivation of their loved ones' rights or for emotional stress caused by such a deprivation." *Baez v. Pinker*, No. 13-CV-9165, 2015 WL 3457277, at *4 (S.D.N.Y. June 1, 2015) (citing *Collins v. W. Hartford Police Dep't*, 324 Fed. App'x 137, 138 (2d Cir. 2009) (summary order)), *aff'd*, 673 F. App'x 50 (2d Cir. 2016).

Accordingly, any injury resulting from Defendants' allegedly retaliatory conduct was to Devi, Mary, and Devi's campaign.  To the extent that Nampiaparampil seeks to sue on behalf of those injured by the retaliatory conduct, he cannot do so.  "[A] plaintiff generally may not establish standing on the basis of injuries to third parties, unless the plaintiff additionally demonstrates 'a close relation to the injured third party and a hindrance to that party's ability to protect its own interests.'" *In re Big Apple Volkswagen, LLC*, 571 B.R. 43, 52 (S.D.N.Y. 2017) (quoting *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 174 (2d Cir. 2005)).  Although Nampiaparampil has alleged a familial relationship with both Devi and Mary, he has not alleged that either is unable to protect her own interests.  Indeed, both Devi and Mary have brought suits of their own.  (FAC ¶¶ 7, 40.)

In short, Nampiaparampil has standing to assert a First Amendment claim challenging Defendants' campaign finance regulations as they affected his ability to contribute to Devi's

campaign, but he lacks standing to assert his other First Amendment challenges to Defendants' campaign finance regulations.

### c.    Fourteenth Amendment Campaign Finance Claims

Nampiaparampil also brings Fourteenth Amendment challenges to Defendants' campaign finance restrictions as they pertain to Mary and Devi's ability to engage legal representation in audit and sanitation violation proceedings as well as the campaign's ability to spend on security and public safety.  (FAC ¶¶ 61-68.)  Again, because Nampiaparampil was not an officer of the campaign, he was not party to the legal proceedings in which Mary and Devi were restricted from engaging counsel.  Accordingly, Nampiaparampil relies on allegations that he suffered emotional distress as a result of the actions taken against Devi and Mary.  (*See, e.g.*, *id.* ¶ 35 ("[Nampiaparampil] experienced severe stress and emotional distress knowing that he could not assist in providing security for his daughter while she campaigned in high-risk areas."); *id.* ¶ 37 ("The emotional distress of trying to keep his wife motivated and hopeful while seeing her become consumed by despair over legal and financial pressures caused [Nampiaparampil] severe suffering.").)  He lacks standing to bring these claims, for substantially the same reasons that he lacks standing to bring his retaliation claim.  *See Baez*, 2015 WL 3457277, at *4; *cf. Garten v. Hochman*, No. 08-CV-9425, 2010 WL 2465479, at *5 (S.D.N.Y. June 16, 2010) (holding that "severe strain" on a relationship between the plaintiff and his family members "is a far cry from ending the relationship" and insufficient injury to support a Fourteenth Amendment intimate association claim).

Nampiaparampil therefore lacks standing to bring his Fourteenth Amendment challenges to Defendants' campaign finance regulations.

### 2.    Election Administration Claims

Nampiaparampil also lacks standing to bring his First and Fourteenth Amendment claims challenging the Defendants' conduct as it pertained to the Voter Guide or the debate. Nampiaparampil alleges that Defendants excluded or altered key information about Devi's campaign while affording other candidates more favorable representation, and that Defendants failed to provide a sufficient appeal process for candidates who sought to clarify or correct information in the Voter Guide.  (FAC ¶¶ 70-72.)  Nampiaparampil largely alleges injury only to Devi and her campaign.  (*See id.* ¶ 73 (noting that these actions "diminished [Devi's] ability to compete on equal footing with other candidates").)  And although Nampiaparampil alleges that he experienced emotional distress as a result of the Voter Guide incident (*id.* ¶ 44), such an allegation does not establish standing to bring a § 1983 claim, for the reasons discussed above.

Nampiaparampil similarly lacks standing to challenge Defendants' minimization of debate coverage and discrimination against Indian-American and Asian-American journalists. (*Id.* ¶¶ 50-51.)  Although Nampiaparampil alleges that he and other members of the public were deprived "of their right to receive political speech and fully participate in the electoral process" (*id.* ¶ 76), he does not plead specific allegations as to how he himself was deprived.  He has not alleged, for example, that he was unable to watch the debate because Defendants broadcasted the debate on Spectrum News NY1, that he was a journalist harmed by Defendants' restrictions on access to the debate, or that he suffered any other specific and cognizable injuries.  "Nondescript and conclusory allegations of injury are not the type of general factual allegations from which the Court may presume the specific facts necessary to ensure that the plaintiff has standing, and are insufficient to meet the plaintiff's burden of alleging an injury in fact that is concrete and particularized." *Fullwood v. Wolfgang's Steakhouse, Inc.*, No. 13-CV-7174, 2017 WL 377931,

at *6 (S.D.N.Y. Jan. 26, 2017) (cleaned up).  Accordingly, Nampiaparampil has not alleged standing to bring his Election Administration claims.

### B.     Time Bar

Nampiaparampil has alleged standing to bring only his First Amendment challenge to Defendants' campaign finance restrictions to the extent they limited his ability to donate money and services to Devi's campaign.  However, Devi's campaign ended in November of 2021 and Nampiaparampil did not bring this action until February 14, 2025.  (FAC ¶ 2; *see* ECF No. 1.) "In section 1983 actions, the applicable limitations period is found in the 'general or residual [state] statute [of limitations] for personal injury actions.'"  *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (quoting *Owens v. Okure*, 488 U.S. 235, 249-50 (1989)).  In New York, that period is three years.  *See id.* (citing N.Y. C.P.L.R. § 214(5)).  That three-year limitation period begins to run "when the plaintiff knows or has reason to know of the injury which is the basis of his action."  *Id.* at 80 (quotation marks omitted).

Because Nampiaparampil commenced this action over three years after the conclusion of Devi's campaign, Defendants argue that Nampiaparampil's First Amendment challenge to their campaign finance regulations is time-barred.  (Mem. at 16-18.)  In response, Nampiaparampil argues that "the retaliation and chilling effects continued into 2024 and 2025."  (Opp. at 16.)  But Nampiaparampil seems to rely on audit notices issued to Devi's campaign and the campaigns of other non-party candidates.  (*Id.* at 16-18.)  As explained above, Nampiaparampil was not himself subject to any auditing obligations, and he cannot bring a claim on behalf of a campaign that was subject to auditing obligations.

However, the FAC also alleges that Nampiaparampil "wanted to help with the audit" of Devi's campaign, "but was again prohibited from doing so," "[f]ollowing the campaign's conclusion on November 2, 2021."  (FAC ¶ 29.)  This allegation, with all inferences construed in

favor of Nampiaparampil, suggests that he had an interest in donating his services to Devi's campaign that continued even after the conclusion of the 2021 election, and that he suffered a First Amendment injury when he was denied the ability to do so. Thus, on this record, the Court cannot conclude that Defendants have met their burden of showing that Nampiaparampil's First Amendment claim is time-barred.

### C.      Merits

Although Defendants argue that Nampiaparampil fails to assert a cognizable *Monell* claim against the City, their arguments seem to concern Nampiaparampil's retaliation claim. (Mem. at 19.) To the extent Defendants seek to make this argument as to Nampiaparampil's First Amendment challenge against the CFB's campaign finance regulations, it fails at the motion to dismiss stage. Nampiaparampil alleges that the restrictions imposed on him were done so pursuant to City rules, which would constitute a custom or policy for *Monell* purposes. (FAC ¶¶ 22-23 (citing 52 R.C.N.Y. § 5-06).) *See Chin v. New York City Hous. Auth.*, 575 F. Supp. 2d 554, 561 (S.D.N.Y. 2008) ("Official policy traditionally takes the form of an 'ordinance, regulation, or decision officially adopted and promulgated by [the municipality's] officers.'" (quoting *Monell v. Dep't. of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978))).

In any event, as to Nampiaparampil's only surviving claim, Defendants seem to principally argue that it fails on the merits because the CFB's public campaign financing program is constitutional. (Mem. at 19-20.) In support, Defendants cite *Corren v. Condos*, 898 F.3d 209 (2d Cir. 2018), a Second Circuit case that upheld Vermont's campaign finance law offering public funding to qualifying candidates and imposing an additional set of restrictions on candidates who accept that offer. *See Corren*, 898 F.3d at 214, 223-24. In particular, *Corren* concluded that "if a candidate declines private contributions in favor of public funds, the candidate's supporters cannot complain that the state has infringed their rights to make

15

contributions." *Id.* at 224.   When candidates are free to engage in unlimited private funding and spending instead of opting into more restrictive public funding, "the restriction on contributions that applies when candidates voluntarily elect public funding does not abridge supporters' rights." *Id.*

Nampiaparampil alleges that he was limited to a $2,000 contribution to Devi's campaign, including volunteer services.   (*See* FAC ¶¶ 21, 27, 29.)   New York City regulations impose a $2,000 limit on campaigns that seek public financing.[3]   *See* N.Y.C. Admin. Code § 3-703(1)(f) (requiring that, to be eligible for optional public financing, a candidate or her committee can accept no more than $2,000 in contributions from any one individual).   Defendants argue, accordingly, that Nampiaparampil was subject to the $2,000 limit on donations and volunteer services only because Devi's campaign opted for public financing.[4]   (Mem. at 20-21.)

If, in fact, Nampiaparampil was subject to the $2,000 limit because Devi's campaign opted for public matching, then Nampiaparampil is unlikely to prevail on his First Amendment claim under *Corren*.   *See Corren*, 898 F.3d at 224.   In support of their argument that the $2,000 limit applied because Devi's campaign opted into the public matching program, Defendants cite Devi's complaint in a separate action.   (*See* Mem. at 7.)   But that complaint is not before this

---

[3]   The Court can consider this regulation, even though it is not directly cited in the FAC, as it is judicially noticeable.   *See Jeter v. Mount Sinai Health Sys.*, No. 23-CV-7889, 2026 WL 818735, at *1 n.3 (S.D.N.Y. Mar. 25, 2026).

[4]   The Court notes that judicially noticeable regulations governing the CFB's matching program do not appear to deem volunteer services to be "contributions."   *See* N.Y.C. Admin. Code § 3-702(8) (defining "contribution" to "not include . . . the value of services provided without compensation by individuals who volunteer a portion or all of their time on behalf of a candidate or political committee"); 52 R.C.N.Y. § 1-02 (defining "in-kind contribution" to "not include personal services provided without compensation by individuals volunteering a portion or all of their time on behalf of a candidate").   Nonetheless, the FAC alleges that CFB officials told Devi's campaign, who relayed to Nampiaparampil, that individuals could not contribute money or services in excess of the $2,000 limit.   (*See, e.g.*, FAC ¶¶ 21-25.)   The Court accepts the allegations in the FAC as true for purposes of the pending motion to dismiss.

16

Court and cannot be considered at this juncture. *Cf. DiFolco*, 622 F.3d at 111. The FAC is unclear as to whether Devi's campaign had indeed opted for public funding. In fact, Nampiaparampil's opposition alleges that Devi's campaign "never received any public funds." (Opp. at 11.) It is therefore possible that Nampiaparampil was subject to this limitation even though Devi's campaign did not opt into public matching, in which case Defendants' sole argument on the merits is inapplicable. Because the FAC and opposition are unclear as to the precise reason Defendants imposed the $2,000 contribution limit on Devi's campaign, the Court declines to dismiss Nampiaparampil's First Amendment claim on the basis that any limitation was pursuant to the campaign's decision to opt into public funding.

## IV.    Conclusion

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part. The motion is DENIED as to Nampiaparampil's First Amendment claim challenging Defendants' campaign finance regulations as they affected his ability to donate time and money to Devi's campaign. The motion is GRANTED in all other respects.

Defendants are directed to file an answer to the remaining claim within fourteen days after the date of this Opinion and Order. *See* Fed. R. Civ. P. 12(a)(4)(A).

The parties are directed to appear for a telephonic conference on July 8, 2026 at 12:00 p.m. At the scheduled time, Plaintiff and counsel for Defendants should call (855) 244-8681 and enter ID number 2312-828-7066 ##.

The Clerk of Court is directed to close the motion at Docket Number 36.

SO ORDERED.

Dated: June 1, 2026
     New York, New York

                                  J. PAUL OETKEN
                            United States District Judge